# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| ETERNITY TECHNOLOGIES, INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 4:25-cv-119 |
| | § | Judge Mazzant |
| VETERANS SERVING AMERICA, | § | |
| LLC, | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiff Eternity Technologies, Inc.'s Opposed Motion to Strike Counterplaintiff's Expert Designations Pursuant to FRCP 26(a)(2) (the "Motion") (Dkt. #17). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

This is a breach of contract case between two companies in the consumer and industrial electronics business. Plaintiff provides industrial batteries and power supply products to its customers, while Defendant provides direct-current energy solutions to its customers (Dkt. #19 at p. 2). Over the course of business, Plaintiff sold multiple lead-acid batteries to Defendant on credit. Defendant eventually refused to pay for the batteries, citing issues with the usability and effectiveness of the purchased product. Plaintiff subsequently filed suit against Defendant on February 7, 2025 to collect its owed commercial debt of $774,641.71 (Dkt. #17 at p. 2; Dkt. #19 at p. 10). In response, Defendant filed a Counterclaim for breach of contract and breach of warranty, seeking counter damages in the amount of "at least $2,010,865.50" (Dkt. #7).

On October 31, 2025, Defendant served two expert disclosures pertaining to their president and a recently hired employee (Dkt. #17 at pp. 2–3). Plaintiff filed the present Motion on November 24, 2025, asking the Court to strike both expert designations as insufficient (Dkt. #17). The next month, on December 8, 2025, Defendant filed its response (Dkt. #19), along with amended expert disclosures (*See* Dkt. #20).[1] Finally, on January 19, 2025, Plaintiff filed a notice of objection related to this matter (Dkt. #26). The Motion is now ripe for adjudication.

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), the Supreme Court instructed courts to function as gatekeepers and determine whether expert testimony should be presented to the jury. *Id.* at 590–93. Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her

---

[1] Defendant has not raised any argument against Plaintiff's claim that "[t]he Amended Expert Disclosures did not cure the identified deficiencies" in Defendant's original disclosures and has further not provided the Court with the amended expert disclosures for analysis (Dkt. #26 at p. 1). Thus, under the local rules of this district, the Court will accept Plaintiff's claim as unopposed, and the findings contained within this Memorandum Opinion and Order will apply to the amended expert disclosures. LOCAL RULE CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition . . . .").

"knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant, but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following non-exhaustive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

Plaintiff raises two arguments against Defendant's expert disclosures. First, Plaintiff argues that Defendant's disclosures violated Federal Rule of Civil Procedure 26(a)(2)(C), as they were not

accompanied by either: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; [or] (ii) a summary of the facts and opinions to which the witness is expected to testify" (Dkt. #17 at p. 3). *Cmty. of Hope Methodist Church v. Church Mut. Ins. Co.*, No. 4:24-CV-00656-O, 2025 WL 3762070, at *2 (N.D. Tex. Dec. 30, 2025). Second, Plaintiff argues that Defendant's disclosures are deficient in light of certain requirements imposed by Federal Rule of Evidence 702 (*See* Dkt. # 17 at pp. 2–3). In defending its expert witness designations, Defendant has the burden to prove by a preponderance of the evidence that the anticipated testimony is admissible. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (*en banc*), *cert. denied*, 526 U.S. 1064 (1999). The district court's responsibility is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152. Because Plaintiff raises similar arguments between the two proposed experts, the Court will address each expert in turn.

## I.   Tony Amato

Defendant's first non-retained expert disclosure concerns its acting president, one Tony Amato ("Amato"). If Defendant has offered sufficient expert disclosures, Amato will be permitted to testify at trial. Otherwise, the Court must grant Plaintiff's expert disclosure challenge and preclude his testimony. For reasons outlined below, Amato will be presently permitted to testify as a non-retained expert at trial.

### A.   Compliance With Rule 26(a)(2)(C)

Federal Rule of Civil Procedure 26(a)(2)(C), adopted in 2010, "is intended to ensure that an opposing party has some notice of what the non[-]retained expert will testify about." *Everett Fin., Inc. v. Primary Residential Mortgage, Inc.*, No. 3:14-CV-1028-D, 2017 WL 90366, at *3 (N.D.

Tex. Jan. 10, 2017) (citing 8A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2031.2, at 92 (3d ed. 2010 & Supp. 2016)). As the Court has repeatedly held, "[w]hen a party fails to provide a meaningful 'summary of the facts and opinions' forming the basis of a [non-retained expert's] testimony, the disclosure is insufficient." *Avneri v. Hartford Fire Ins. Co.*, No. 4:16-CV-00917, 2017 WL 4517955, at *2 (E.D. Tex. Oct. 10, 2017) (citing *Motio, Inc. v. BSP Software LLC*, No. 4:12-CV-647, 2016 WL 74425, at *2 (E.D. Tex. Jan. 6, 2016)).

In determining whether Defendant's disclosure is sufficient under Rule 26, the Court recognizes at the outset that the "disclosure requirement for non-retained experts 'is intended to be less stringent than those requirements applicable to retained experts.'" *StoneCoat of Tex., LLC v. ProCal Stone Design, LLC*, No. 4:17CV303, 2019 WL 9899919, at *6 (E.D. Tex. June 28, 2019) (quoting *McCranie v. Home Depot U.S.A., Inc.*, No. 4:15-cv-423-ALM-CAN, 2016 WL 7626597, at *6 (E.D. Tex. Aug. 25, 2016)). With this in mind, the Court turns to the particular information offered by Plaintiff's expert disclosure.

The relevant disclosure indicates that Amato is expected to explain how the industry standard on battery capacity applies to the batteries at issue in this case and further suggests that he will connect that information to certain capacity test failures. The disclosure also indicates that Amato will opine on battery storage and maintenance practices, which will purportedly allow him to rule out end-user error and place blame on the construction of the batteries themselves (Dkt. #17-2 at p. 2). The document also states that Amato "will explain that capacity testing conducted in accordance with" specific provisions of the Battery Council International Standards ("BCIS-14") will show "that numerous . . . batteries failed to achieve their rated capacity" (Dkt. #17-2 at p. 2).

The disclosure is not without its flaws, however, as it lacks extensive factual grounding. Indeed, the document often substitutes specific facts with vague allusions to factual circumstance, which is perhaps best illustrated by reference to a sentence found in its opening pages: "Amato is expected to testify that . . . tests were properly conducted and provide reliable evidence that the batteries were defective" (Dkt. #17-2 at p. 2). However, the Court finds that while Defendant could have been more specific in its factual depictions, the provided disclosure is sufficient to satisfy the underlying purpose of Rule 26, which is to prevent prejudice and surprise. *Balser v. Harbor Freight Tools Tex., LLP*, No. H-21-502, 2022 WL 22868541, at *2 (S.D. Tex. Mar. 17, 2022) (citing *Joe Hand Promotions, Inc. v. Chios, Inc.*, 544 F. App'x 444, 446 (5th Cir. 2013) (per curiam)); *see Open Cheer & Dance Championship Series, LLC v. Varsity Spirit, LLC*, No. 2:23-CV-155-Z, 2025 WL 2053286, at *8 (N.D. Tex. July 21, 2025) ("Rule 26(a)(2)(C) disclosures do not require waterfalls of detail. Even a trickle will suffice." (internal citation omitted)). For example, Defendant succeeded in notifying Plaintiff of Amato's imminent use of the BCIS-14 standard, referenced specific operational and maintenance practices performed by Defendant (such as "rotation of batteries for multi-shift operations, periodic load testing, and battery replacement cycles") and implied the use of company documents related to the cost of Defendant's operation (Dkt. #17-2 at pp. 3–4). Because Plaintiff "has some notice of what the non-retained expert will testify about" through the operation of Defendant's expert disclosure, the Court declines to strike it for any violation of Rule 26. *StoneCoat*, 2019 WL 9899919, at *6 (citation modified) (quoting *Everett*, No. 3:14-CV-1028-D, 2017 WL 90366, at *2 (N.D. Tex. Jan. 10, 2017)).

### B.    Admissibility Under Rule 702

"Regardless of whether a witness is proffered as a retained expert or as a non-retained expert, the witness must still satisfy the requirements of *Daubert* . . . and FED. R. EVID. 702."

*MGMTL, LLC v. Strategic Tech.*, No. CV 20-2138-WBV-MBN, 2022 WL 474161, at *5 (E.D. La. Feb. 16, 2022). As "[a]n expert witness's testimony should be excluded if the district court 'finds that the witness is not qualified to testify in a particular field or on a given subject,'" *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)), "the [C]ourt will evaluate the witness's knowledge, skill, experience, training, or education with respect to the subject matter of the testimony." *Jackson v. Parker-Hannifin Corp.*, 645 F. Supp. 3d 577, 586 (S.D. Miss. 2022) (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009)). Amato is expected to offer testimony on the following subjects:

(a)     Industry standards for performance testing;

(b)     Evaluation of capacity test results, including the "appropriateness, methodology, and accuracy of capacity tests conducted on [Plaintiff's] batteries";

(c)     Fleet management practices;

(d)     Maintenance and longevity practices "employed by [Defendant's] customers," including the best practices for "maintaining lead-acid batteries in optimal condition, including proper watering, equalization charging, acid spill management, and terminal corrosion control";

(e)     Warranty administration and offset decisions; and

(f)     Computation of offsets and damages (Dkt. #17-2 at pp. 2–3, 5).

Plaintiff does not challenge the relevance or reliability of Amato's testimony. Nor does Plaintiff challenge the principles and methods or application of principles and methods utilized by Amato to reach his opinions.[2] Rather, Plaintiff argues that Amato's "sales and management

---

[2]   As a result, the Court need not address these particular elements. *See, e.g.*, *FLST, Ltd. v. Explorer Pipeline Co.*, No. 4:16-CV-00017-KPJ, 2017 WL 3668140, at *2 (E.D. Tex. Aug. 25, 2017) ("Defendant does not appear to challenge Mr. Lawrence's principles and methods, application of principles and methods, or qualifications. Thus, the Court will presume Mr. Lawrence has met those standards as required of an expert." (internal citation omitted)); *see also* *Phillips v. Gen. Motors Corp.*, No. CIV.A.99-3423, 2000 WL 1285380, at *2 (E.D. La. Sept. 12, 2000) ("Plaintiff, however, challenges the qualifications of these four experts, not the reliability or relevance of their testimony. Accordingly, the Court decides this motion on that basis.").

7

background" is insufficient to qualify him as an expert possessing the necessary specialized knowledge "to testify as to: '[b]est practices for maintaining lead-acid batteries in optimal condition, including proper watering, equalization charging, acid spill management, and terminal corrosion control'" (Dkt. #17 at pp. 4–5). Plaintiff also challenges Amato's specialized knowledge concerning "the standards for designing and maintaining . . . batteries" (Dkt. #17 at p. 5). Accordingly, the Court analyzes only Amato's qualification as an expert as to these three topics. *See, e.g.*, *Jesus Church of Victoria Tex., Inc. v. Church Mut. Ins. Co.*, 627 F. Supp. 3d 715, 718 n.1 (S.D. Tex. 2022) (limiting analysis to the reliability of an expert's testimony as "[t]he Parties do not raise arguments based on the *Daubert* factors, and the Court finds they are not particularly applicable to the expert testimony at issue here").

Plaintiff contends that Amato is not qualified to opine on any of the three topics identified above because he is not an "electrical, chemical, mechanical or automotive engineer . . . the business experience [Amato has] is in sales and management roles" (Dkt. #17 at p. 4). Plaintiff's argument relies upon the notion that "employment experience, without more, does not meet the standard for expert testimony" under Rule 702 (Dkt. #17 at p. 3). Defendant responds that "its president wear[s] many hats," and generally claims that Amato is the "lead decision maker on everything affecting his business," which naturally includes every subject under which Amato is expected to testify (Dkt. #19 at p. 4). Defendant emphasizes that "Amato had no other technical expert within the company to turn to for assistance in making technical decisions" for eleven years (Dkt. #19 at pp. 4–5). Defendant also avers that Amato has long "been responsible for evaluating lead-acid battery performance, diagnosing failure nodes, interpreting capacity-test results,

determining whether product conditions warranted a warranty claim, and advising customers on best practices for maintaining motive-power batteries" (Dkt. #19 at p. 5).

"To qualify as an expert, 'the witness must have such knowledge or experience in his field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (citation modified) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)). A proposed expert does not have to be "highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." *Huss v. Gayden*, 571 F.3d at 452. Furthermore, "[t]he Court has broad discretion in determining the admissibility of expert testimony, and the rejection of expert testimony is the exception, not the rule." *Nay Co. v. Navigators Specialty Ins. Co.*, No. 3:16-CV-02675-N, 2018 WL 1536341, at *1 (N.D. Tex. Jan. 19, 2018).

Plaintiff contends that Amato "may have lots of experience in the industry and may be a knowledgeable lay witness, but he does not qualify as an expert" (Dkt. #17 at p. 4). Defendant disagrees, emphasizing Amato's "36 years in the motive battery industry" and his role in founding Veterans Serving America, LLC (Dkt. #19 at p. 4). Ordinarily, Amato's experience as a corporate manager would be deemed too far removed from the scope of his testimony regarding industry standards for performance testing, evaluation of capacity test results, or maintenance and longevity practices. But the Court must review Amato's role in its full "factual context" to determine whether he qualifies as an expert on those three topics. *See Luv N' Care v. Laurain*, No. CV 3:16-00777, 2021 WL 3440623, at *6 (W.D. La. August 5, 2021) (quoting *Alfred E. Mann Found. for Sci.*

9

*Research v. Cochlear Corp.*, No. CV 07-8108 FMO (SHx), 2014 WL 12586105, at *11 (C.D. Cal. Jan. 3, 2014)).

In examining the factual context behind Amato's proposed testimony, the Court finds it appropriate to consider an adjacent district court ruling, *Craft v. Max Access LLC*, No. 6:22-CV-05899, 2025 WL 2803649, at *2 (W.D. La. Sept. 30, 2025). In that case, a district court analyzed whether a salesman could be qualified as an expert as to the operation of a scaffolding system he sold to customers. *Id.* The district court noted that "[o]rdinarily, [his] experience as a salesperson would be deemed too far removed from the scope of his testimony," but found that the "factual context," including the salesman's OSHA-related training credentials and his experience with assisting crews in rigging swing scaffolds, qualified him as an expert under Rule 702. *Id.*

As applied to the case at hand, this reasoning suggests that Amato's extensive personal experience in the battery industry, including his "jack-of-all-trades" approach to his duties as corporate president, has imbued him with the knowledge necessary to qualify his proposed expert testimony on industry standards, specific battery operation, and battery management techniques. Indeed, Defendant has identified a sufficient "factual context" to provide the Court with a basis to qualify Amato as an expert—the corporate president acts as a "lead decision maker," personally involving himself with multiple elements of the evaluation and operation of lead-acid batteries and consistently advises his customers on technical aspects of the battery products (Dkt. #19 at p. 4).

Importantly, "an expert witness is not strictly confined to his area of practice but may testify concerning related applications; a lack of specialization does not affect the admissibility of his opinion, but only its weight." *United States v. Wen Chyu Liu*, 716 F.3d 159, 168-69 (5th Cir. 2013) (quoting *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir. 1991)). Like the salesman in

10

*Craft*, Amato may opine on industry standards for performance testing, evaluation of capacity test results, and battery maintenance/longevity practices given his extensive personal experience regarding the same. Indeed, rather than exclusion, strategies such as "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## II.    Todd Muratori

Defendant's second non-retained expert disclosure concerns its Director of Operations, one Todd Muratori ("Muratori"). As with its first non-retained expert, Muratori will be permitted to testify at trial if the Court finds Defendant has offered sufficient expert disclosures under Federal Rule of Civil Procedure 26 and Federal Rule of Evidence 702. Any finding in the alternative will preclude his testimony. For reasons indicated below, Muratori will not presently be permitted to testify as a non-retained expert at trial.

### A.    Compliance With Rule 26(a)(2)(C)

Unlike Plaintiff's challenge to Amato's testimony, its attack on Muratori's expert designation strikes at the heart of Rule 26(a)(2)(C), which applies specifically to "non-retained" experts. As indicated above, "many courts in the Fifth Circuit draw a distinction between the testimony of retained experts, who must file an expert report under Rule 26(a)(2)(B), and non-retained experts." *Bustillos v. Kumar*, No. EP-23-CV-00425-KC, 2025 WL 384049, at *10 (W.D. Tex. Feb. 4, 2025). A non-retained expert "must testify from the personal knowledge they gained on the job, which may limit their testimony." *Jesus Church*, 627 F. Supp. 3d at 723 (internal quotation marks omitted) (quoting *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 371 (7th Cir. 2017)). Further,

> [w]hen an expert is part of the ongoing sequence of events and arrives at his causation opinion during the events, his opinion testimony is not that of a retained or specially employed expert. In contrast, if the expert comes to the case as a stranger and draws the opinion from facts supplied by others, in preparation for trial, he reasonably can be viewed as retained or specially employed for that purpose, within the purview of Rule 26(a)(2)(B).

*Cooper v. Meritor, Inc.*, No. 4:16-CV-52-DMB-JMV, 2018 WL 2451833, at \*6 (N.D. Miss. May 31, 2018) (internal citation and quotation marks removed) (citation modified) (quoting *Downey v. Bob's Discount Furniture Holdings, Inc.*, 633 F.3d 1, 7 (1st Cir. 2011)).

Plaintiff alleges that Muratori "did not work for [Defendant] during the period from 2018 through 2024 when the batteries at issue were purchased by [Defendant] from [Plaintiff]" (Dkt. #17 at p. 6). Thus, Plaintiff asks the Court to recognize that Muratori's "personal knowledge, observation[,] and any testing of the batteries at issue would have occurred at a minimum one year after the batteries were received and accepted by [Defendant]" (Dkt. #17 at p. 6). Despite Plaintiff's argument that Muratori "could not have performed testing on the batteries at issue, nor observed the field misuse . . . [because] he was not employed by [Defendant] at the time," Defendant asks the Court to permit Muratori to testify as a non-retained expert witness under a variety of topics, including: (a) technical performance and failure mechanisms of the motive-power lead-acid batteries supplied by Plaintiff; (b) the design and construction of tubular-plate batteries; (c) the principles of proper charging and diagnostic analysis; along with (d) fleet-management and maintenance practices, equipment-matching considerations, and the results of forensic inspections and standardized capacity testing under BCIS-14 (Dkt. #19 at p. 8).

In analyzing Plaintiff's challenge to Muratori's designation as a non-retained expert witness, the Court recognizes at the outset that "[t]he distinction between retained and non-retained experts should be interpreted in a common sense manner." *DiSalvatore v. Foretravel,*

*Inc.*, No. 9:14-CV-00150-KFG, 2016 WL 7742996, at *2 (E.D. Tex. May 20, 2016). "If [a party] cannot show a particular expert has firsthand factual knowledge of his allegations, that expert must submit a report in compliance with Rule 26(a)(2)(B)." *Schoch v. Wells Fargo Home Mortgage*, No. 416CV00619ALMCAN, 2017 WL 3836144, at *2 (E.D. Tex. May 16, 2017).

Notably absent from Defendant's response to Plaintiff's Motion is any indication of Muratori's personal involvement or association with the specific batteries that comprise the subject matter of the present litigation. "In distinguishing between a retained and non-retained expert, the courts consider whether the expert was retained or specially employed for the purpose of providing testimony in the case and whose opinions are based on information provided by the attorney . . . ." *Hada v. United States*, No. 5:19-CV-129-OLG, 2021 WL 6774905, at *1 (W.D. Tex. Apr. 9, 2021). Thus, the Court must turn to the pleadings to determine whether Muratori possesses sufficient firsthand knowledge of the subject matter of this litigation to provide a non-retained expert opinion.

Here, Muratori joined Defendant as its Director of Operations in May of 2025, but the invoices due on the batteries were "to be paid within sixty (60) days of issuance" and were provided to Defendant up until January 8, 2025 (Dkt. #1 at p. 3). While Plaintiff's complaint indicates that it "made multiple requests for payment and [was] met with delays and refusals" after January 8, 2025 (Dkt. #1 at p. 3), the absence of any showing of proof by Defendant has left the Court unconvinced that Muratori has enough firsthand experience to permit him to opine as a non-retained expert witness on matters relating to the storage, maintenance, or operation of the specific batteries at issue. Muratori was just as absent when the first invoice was provided to Defendant on August 20, 2024, as he was when the last invoice became due on March 9, 2025 (*See* Dkt. #1 at p. 3). He did not personally experience, examine, or otherwise observe the way the

13

relevant batteries were stored, maintained, or utilized. Instead, his opinion relies upon facts and circumstances described to him by third parties.

Defendant's disclosures indicate that "Muratori's *overall opinion* is that the batteries at issue exhibited defects traceable to manufacturing deficiencies rather than field misuses or maintenance errors . . . ." (Dkt. #17-2 at p. 6 (emphasis added)). Muratori was not physically present during any such field use or maintenance of the batteries, and Defendant has not indicated that he personally observed any "facts giving rise to the subject litigation." *Callahan v. Cockerell*, No. 3:24-CV-264-GHD-RP, 2025 WL 2992235, at *6 (N.D. Miss. Oct. 23, 2025) (citation modified) (noting that "[a] retained expert is one who is recruited to provide expert testimony 'without any prior, personal knowledge of the facts giving rise to' the subject litigation." (quoting *Ferrara Land Management, LLC v. Landmark Am. Ins. Co.*, No. 1:19cv956-HSO-JCG, 2021 WL 4819461, at *2 (S.D. Miss. July 19, 2021))). Thus, Muratori's "overall opinion" lies beyond the relaxed Rule 26(a)(2)(C) standard.

To the extent that Muratori's testimony is subject to the report requirement of Rule 26(a)(2)(B), the Court must weigh four factors to determine whether the testimony should be struck pursuant to Federal Rule of Civil Procedure 37(c): "(1) the importance of the witness's testimony; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation, if any, for the party's failure to comply with 26(a)'s disclosure requirement." *Kim v. Time Ins. Co.*, 267 F.R.D. 499, 504 (S.D. Tex. 2008) (citation modified).

Certainly, Muratori's testimony is of particular importance: Defendant has designated only one other expert witness. However, the Court recognizes that any designation of Muratori as an expert would perpetuate an undue burden on Plaintiff at trial. In light of the August 6, 2026 pretrial

14

date, along with the negative effect of Rule 702 and *Daubert* on Muratori's proposed expert testimony, the Court sees fit to permit Plaintiff to amend its expert designations beyond the date contemplated by the scheduling order in accordance with the terms outlined below.

### B. Admissibility Under Rule 702

As noted above, Rule 702 permits testimony by an expert "who is qualified by knowledge, skill, experience, training, or education" to be used at trial if it is more likely than not that: (1) the expert's specialized knowledge is helpful to the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case. *See* FED. R. EVID. 702.

Plaintiff challenges the qualification, reliability, and relevance of Muratori's anticipated expert opinion (Dkt. #17 at p. 7). The Court finds that Plaintiff's challenge as to reliability must succeed, as "there are no principles or methods discussed, which were used by [Muratori] to arrive at his anticipated opinions, and there is no discussion related to how [Muratori] applied certain principles or methods to the facts of this case." *StoneCoat*, 2019 WL 9899919, at *19. Unsurprisingly, the Court finds itself unable to examine the sufficiency of various facts, data, and testing methods which are entirely absent from Defendant's disclosure or response. Because Defendant's second expert disclosure fails to comport with the requirements of Rule 702 and *Daubert*, the Court sees fit to grant Plaintiff's Motion to strike Defendant's expert designation as to Muratori.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff Eternity Technologies, Inc.'s Opposed Motion to Strike Counterplaintiff's Expert Designations Pursuant to FRCP 26(a)(2) (Dkt. #17) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Defendant shall be permitted leave to refile and/or supplement *both* expert disclosures pertaining to Amato and Muratori; any such amended disclosure of expert testimony pursuant to Federal Rule of Civil Procedure 26(a)(2) and Local Rule CV-26(b) shall be filed within ***fourteen (14) days*** of the date of this order. Plaintiff's deadline to object to Defendant's newly refiled or supplemented expert witnesses shall be extended to ***fourteen (14) days*** following any such refiling or supplementation.

**IT IS SO ORDERED.**

**SIGNED this 12th day of May, 2026.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

16